DECISION AND JUDGMENT ENTRY
This is an appeal from the conviction and sentence of the Ross County Court of Common Pleas. Defendant-Appellant John Burgin appeals his conviction for Attempted Rape, in violation of R.C. 2923.03. Appellant asserts that he received ineffective assistance of counsel at trial. We find no merit in appellant's argument and affirm the judgment of the trial court.
 STATEMENT OF THE CASE
On July 4, 1999, around 8:30 p.m., Cheryl Osborne was on the south side of Chillicothe searching for someone to sell crack cocaine to her. At that time, Timothy Brown, Sr., and his son, Timothy Brown, Jr., were sitting on the front porch of Mr. Brown, Sr.'s residence. Ms. Osborne asked Mr. Brown, Sr., to sell her some drugs, but he told her "no." Ms. Osborne then crossed the street and awoke appellant, who was sleeping on a couch on the porch of the house located at 38 West Seventh Street. Mr. Brown, Jr., heard Ms. Osborne ask appellant for drugs. It was still daylight and both Browns could see Ms. Osborne and appellant walk around the side of 38 West Seventh Street to the backyard of that house. Mr. Brown, Jr., heard Ms. Osborne and appellant discuss the details of their drug deal. Appellant came out to the street, looked around, and went back into the backyard. Mr. Brown, Jr., heard appellant tell Ms. Osborne to come closer to him. Ms. Osborne sat down and stood up again, then Mr. Brown, Jr., heard a body hit the ground hard a number of times. Both of the Browns heard Ms. Osborne telling appellant to stop and heard her crying out for help. Both of the Browns saw appellant on top of Ms. Osborne, who was screaming and fighting. The Browns saw Officer Meyers driving down the street on routine patrol. Mr. Brown, Sr., yelled "Five-O," which is a colloquialism for "police." He flagged down Officer Meyers and told him that appellant was raping a female at the rear of 38 West Seventh Street and that he heard her screaming for help. Appellant and Ms. Osborne separated and went off in different directions. Mr. Brown, Jr., heard appellant screaming threats at Ms. Osborne as she was leaving. Appellant came out from behind the fence and Mr. Brown, Jr., observed that appellant's erect penis was sticking out of his unzipped pants. Appellant went back behind the fence and returned with a miniature ball bat and began threatening Mr. Brown, Sr.
Appellant was arrested for assault and was subsequently indicted for one count of Attempted Rape and three counts of Trafficking in Drugs. The drug charges were disposed of in separate proceedings and are not relevant to this appeal.
Appellant argues that his counsel was ineffective for failing to file a timely motion for a jury view of the fence that stood between the witnesses' vantage point and the yard where the attempted rape occurred. The fence was between the backyard of the house at 38 West Seventh Street and the front porch of Mr. Brown, Sr.'s house. The fence was described as a stockade fence constructed of boards. The gap between each board was described as being one-sixteenth inch by appellant and as being something less than one inch to one and one-half inches by the Browns. Officer Meyers and the Browns testified that they could see through the gaps in the fence and see what people were doing in the backyard of 38 West Seventh Street. In addition, Mr. Brown, Jr.'s testimony reflects that the front porch of his father's house was higher than the level of the scene across the street.
On the day of the trial, after Officer Meyers and Mr. Brown, Jr., had already testified that they could see through the gaps between the boards in the fence sufficiently well to see the activities of Ms. Osborne and appellant, defense counsel filed a motion for a jury view of the scene of the attempted rape. The trial court denied the motion as being untimely filed.
At the conclusion of the trial, appellant was convicted of:
 Attempted Rape. He was sentenced to seven years incarceration to be served consecutively to the prison terms imposed for the drug convictions.
 ASSIGNMENT OF ERROR I:
 COUNSEL FOR DEFENDANT WAS INEFFECTIVE IN FAILING TO TIMELY REQUEST A JURY VIEW OF THE SCENE.
In his sole assignment of error, appellant argues that he was denied the effective assistance of counsel at trial. Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052, provides the standard for determination of whether a criminal defendant received ineffective assistance of counsel. This standard is essentially the same as that utilized by the Supreme Court of Ohio. See State v. Bradley (1989),42 Ohio St.3d 136, 142, 538 N.E.2d 373, 379. The Strickland Court established that, in order for a defendant to prevail on a claim of ineffective assistance of counsel, he must show both that counsel's actions "fell below an objective standard of reasonableness," Id. at 688, 104 S.Ct. at 2064, and that the defendant was prejudiced by his attorney's conduct. Id. at 693, 104 S.Ct. at 2067. The standard for determining prejudice in cases alleging ineffective assistance of counsel is whether there is a "reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."Bradley, 42 Ohio St.3d at 137, 538 N.E.2d at 375, paragraph three of the syllabus.
Our review of trial counsel's performance must necessarily be highly deferential. As the Strickland Court noted, it is always easy in hindsight to criticize the strategic decisions of an attorney whose client has been convicted. Strickland, 466 U.S. at 669,104 S.Ct. at 2065. Thus, we strongly presume that, "under the circumstances, the challenged action might be considered sound trial strategy." State v.Carter (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965, 977.
Appellant contends that if the jury could have seen the fence that there is a substantial probability that the result of the trial would have been different. However, it appears that the purpose of the jury view was to impeach the credibility of Officer Meyers and the Browns by attempting to demonstrate that the witnesses could not have seen what they claimed to have seen through the fence. Impeachment of witnesses is not a proper purpose for taking a jury to view a crime scene. State v.Smith (1993), 90 Ohio App.3d 177, 628 N.E.2d 120; State v. Collins (Jan. 5, 2001), Greene App. No. 2000 CA 8, unreported. R.C. 2945.16 grants the trial court the authority to allow the jury to view a place at which a material fact occurred. A jury view of a crime scene is for the purpose of helping the jurors to better understand the evidence presented. The jury view is neither evidence itself, nor is it a crucial step in the proceedings. State v. Hopfer (1996), 112 Ohio App.3d 521, 679 N.E.2d 321, citing State v. Richey (1992), 64 Ohio St.3d at 367, 595 N.E.2d 915. Even if the trial court had not denied the motion for a jury view as being untimely, the motion was not made for a proper purpose.
Failure to take the jury to a view of the fence did not prevent appellant from presenting testimony and evidence in his defense regarding the fence. The record contains numerous descriptions of the fence, the locations of the witnesses in relation to the fence, and the backyard of 38 West Seventh Street.
In addition to the testimony concerning visibility through the fence, substantial evidence was presented to support the charge of attempted rape. Appellant claimed that his pants were only unbuttoned, not unzipped. Officer Meyers testified that when he first saw appellant, appellant's pants were unzipped. Appellant also contended that for at least the last ten years he had been religiously taking a number of heart and high blood pressure medications and that these medications prevented him from obtaining an erection. The medication theory was totally unsupported by Ms. Osborne and the Browns, all of whom testified that they saw appellant's erection sticking out of his unzipped pants. Likewise, appellant's own testimony on cross-examination contradicted his statements regarding the effect of the medications. When the prosecutor asked appellant if he had been unable to get an erection since 1982, appellant replied, "I have erections all the time."
Based on a review of the record, we cannot say that had appellant's counsel timely requested a jury view of the crime scene that the outcome of the trial would have been any different. We find that appellant's argument is without merit and his sole assignment of error is OVERRULED. The judgment of the Ross County Court of Common Pleas is AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the ROSS COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEENPREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, IT IS TEMPORARILYCONTINUED FOR A PERIOD NOT TO EXCEED SIXTY (60) DAYS UPON THE BAILPREVIOUSLY POSTED. The purpose of the continued stay is to allow appellant to file with the Supreme Court of Ohio an application for stay during the pendency of proceedings in that court.
If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of appellant to file a notice of appeal with the Supreme Court of Ohio within the forty-five (45) day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of the sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J.: Concurs in Judgment and Opinion. Kline, J.: Concurs in Judgment Only.
 ___________________________________ David T. Evans, Judge